Solomon **BROADUS**, Jr., Appellant,

v.

The **STATE** of Oklahoma, Appellee.
No. F–76–183.

Court of Criminal Appeals of Oklahoma.
Aug. 13, 1976.
Rehearing Denied Aug. 31, 1976.

Jack L. Freeman, Freeman & Heffron, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Solomon Broadus, Jr., hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–75–463, for the offense of Unlawful Distribution of a Controlled Dangerous Substance, Heroin, in violation of 63 O.S., § 2–401. His punishment was fixed at fifteen (15) years' imprisonment and a fine in the amount of Fifteen Hundred ($1,500.00) Dollars, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial agent James Birdsong, of the Oklahoma State Bureau of Narcotics and Dangerous Drugs, testified that on May 29, 1974, he was involved in a raid wherein Shirley Shields and other persons were arrested for possession of heroin with the intent to distribute. Thereafter, Shirley Shields agreed to become an informant for the Bureau and to buy and provide information about heroin. Then on November 15, 1974, he and other officers met Shirley Shields at his office. He instructed Officer Black to search Ms. Shields in the women's restroom. Subsequent to the search a body transmitter was placed around Ms. Shields' waist. They went outside and he and other officers searched Ms. Shields' automobile. He gave her

$25.00 purchase money. He followed her to a location at Second and Central and then he proceeded onto Third Street. He advised other surveillance officers of her location. He did not observe her until approximately three minutes later, although he was in audio contact with her via the transmitter. They subsequently met at the Crime Bureau Headquarters and she gave him a green balloon. He and Ms. Shields initialed the balloon and placed it in an O.S.B.I. evidence envelope. The envelope was sealed with seal number 6005. He placed the envelope in the O.S.B.I. locker.

On cross-examination he testified that other officers assisted Ms. Shields in getting her bond reduced. He further testified that she was informed that the District Attorney's Office would be advised of her cooperation.

Officer Jewel Faye Smith, formerly Jewel Faye Black, testified that on November 15, 1974, she conducted a search of Shirley Shields' person and clothing. The search did not reveal either narcotics or money.

Shirley Shields testified that she had two previous convictions for manslaughter in the second degree and forgery in the second degree. She further testified that she had charges pending for possession of heroin with intent to distribute, concealing stolen property and uttering a forged instrument. She admitted injecting heroin earlier that morning. The trial court then interrogated Ms. Shields and found her to be oriented. The trial court thereupon permitted her to continue her testimony, stating that her competency was a question for the jury to determine. She thereafter testified that on November 15, 1974, she observed the defendant in the 300 block of Second Street. She called him over to her car and asked him if he had any drugs. The defendant replied affirmatively and sold her the green balloon for $25.00. She subsequently gave the balloon to agent Birdsong.

On cross-examination she testified that she had been using narcotic drugs for about three years and sometimes used heroin twice a day.

Detective Gary Scott testified that on November 15, 1974, he assisted agent Birdsong search Shirley Shields' automobile. Thereafter, he and Officer Sealey proceeded to a location at N.E. Second and Stiles in a surveillance van. He observed Shirley stop in front of the Chat and Chew Cafe. She honked her horn and the defendant got into her automobile. Officer Sealey filmed the activities on video tape. The trial court thereupon excused the jury and viewed the video tape. The tape was thereafter shown to the jury.

Rodney Sherrer, a forensic chemist with the Oklahoma State Bureau of Investigation, testified that he conducted an analysis of the contents of evidence envelope seal number 6005. In his opinion the green balloon contained heroin.

The defendant testified that on November 15, 1974, he had known Shirley Shields for approximately one year and that in October Shirley Shields borrowed $200.00 from him to get her common-law husband out of jail. She gave him an executed title to her automobile as collateral and promised to make repayment within five days. She failed to repay the money and when he confronted her she promised retribution in the form of a threat. On November 15, 1974, he was eating lunch at the Chat and Chew Cafe when he observed Ms. Shields in her automobile motioning him outside. He got into her car thinking that she was going to repay him the money. However, Ms. Shields started talking instead about heroin. She then switched the conversation and promised to repay him the money in a couple of days. He got out of the car and walked back into the cafe. He denied selling Ms. Shields any heroin on November 15 or at any time prior thereto. He admitted a prior conviction for strong armed robbery.

The first assignment of error is that the trial court erred in not granting a new trial after a juror read a newspaper article

during the course of the trial which "contained materials so prejudicial to defendant that it must necessarily have influenced the verdict." The record reflects that on the morning of the third day of the trial, after the State had rested, the trial court inquired of the jury if any of them had read a newspaper article relating to the trial. The record reflects the following transpired:

"BY THE COURT: One juror has read it. Having read it, can you and will you decide this case solely upon the evidence presented in this Court together with the Instructions of the Court?

"BY THE JUROR: I will.

"BY THE COURT: Would you be influenced when you go to deliberate in this case in any way by this article?

"BY THE JUROR: No, sir.

"BY MR. FREEMAN: If it please the Court (At the bench)—

"BY THE COURT: It was John Huff who stated he read it, and the record speaks for itself as to my questions and his answers." (Tr. 152–153)

The trial court thereupon heard argument of counsel. Defendant's motion for mistrial was overruled and the trial court further instructed the jury as follows:

"BY THE COURT: (To the jury) For the one juror who did see it, do not discuss it with any other member of the jury, and remember your oath to decide this case based solely on the evidence you hear in this Courtroom and the law the Court gives you, and you have stated You can and will do that, is that correct?

"BY THE JUROR: Yes, sir.

"BY THE COURT: And do not discuss its contents with anyone. (Tr. 154–155)

■■ We are of the opinion that the trial court properly overruled defendant's motion for mistrial and subsequent motion for new trial based upon this assignment of error. In *Glasgow v. State*, Okl.Cr., 370 P.2d 933 (1962), we stated in the first four Syllabi as follows:

"1. Before the final submission of a case to the jury, the burden to show prejudice from an alleged misconduct is on defendant.

"2. The burden is on the appellant to make a showing that the jury's verdict was influenced by any alleged unfavorable newspaper article.

"3. Where jurors read newspaper comments on the trial the verdict will not be set aside if defendant is not prejudiced thereby, or if objection might be, but was not, made prior to verdict.

"4. A claim of misconduct of a juror before a criminal case is submitted to a jury is not to be determined by inference or on the basis of speculation, but must be established by clear and convincing proof."

Juror Huff stated that he would decide the case based solely on the evidence presented in court and that he would not be influenced in his deliberations in any way by the article. The trial court further instructed the juror to not discuss the article with the other jurors. Under such circumstances we cannot conclude that the jury's verdict was influenced by the newspaper article. To hold otherwise would be speculative and conjectural. We therefore find this assignment of error to be without merit.

■■ The defendant, in his second assignment of error, contends that the trial court erred by not granting a new trial after prosecutorial misconduct during the closing argument. Defendant first objects to statements made by the prosecuting attorney when he asked the jury, "How soon do you want pushers, which is what the evidence has shown he is? How soon do you want him out? (Tr. 196) And when he stated, "Number one, he was her connection; and number two, I am sure that if she lives through this, if she lives through these trials, it will be something else." (Tr. 185) The trial court overruled defendant's motions for mistrial, but on each occasion admonished the jury to dis-

regard any comments made by the attorneys in final argument unless there was sufficient evidence to support the arguments. In *Kitchens v. State*, Okl.Cr., 513 P.2d 1300 (1973), we stated:

". . . The court's admonition to the jury not to consider the remarks of counsel, or a witness, usually cures an error unless it is of such a nature after considering the evidence that the error appears to have determined the verdict. See *Goodwin v. State*, Okl.Cr., 506 P.2d 571. . . ."

Defendant next objects to a remark by the prosecuting attorney wherein he commented that Ms. Shields had testified that she had bought bad heroin from the defendant previously. Defendant argues that the record is clear that the witness did not so testify. We need only observe that in response to a question propounded on cross-examination the witness stated:

"No. As a matter of fact me and Solomon only had maybe a few words one time, and it was about some dope he had sold me that wasn't any good, and I asked him for my money back." (Tr. 95)

▇ The defendant asserts in his third assignment of error that the trial court erred in not granting a new trial after a juror took unauthorized notes into the jury room. We are of the opinion that the record does not support defendant's allegation of juror misconduct. The only reference in the record concerning this alleged misconduct appears in the transcript of motion for new trial wherein the trial court stated:

"BY THE COURT: —of the juror, and the second point dealt with the taking of notes by a juror. Someone did tell me, I never saw it, that some female juror did take some notes. My recollection is that —and the record will show whether it is there or not—that I admonished them not to take notes and not to take any to the jury room with them.

"BY MR. INGMIRE: That is correct.

"BY THE COURT: If any were taken, I was unaware of it, but I do think the record will reflect the Court's admonition not to do so." (Tr. 215)

Absent a more definitive showing of misconduct, it would again be mere speculation and conjecture on the part of this Court to find that notes were taken and that the same were taken into the jury room. We therefore find this assignment of error to be without merit.

▇ The defendant contends in his fourth assignment of error that the trial court erred in admitting the video tape of the alleged transaction. Defendant argues that the audio portion of the tape was so garbled and inaudible as to be misleading and prejudicial to the defendant. The record reflects that at the conclusion of a hearing held outside the presence of the jury the trial court stated:

"BY THE COURT: The Court has just seen the film. The witness has just testified that it was made at the time and place he stated, and that he was present when it was made, and it properly and correctly depicts what happened. Although the sound is not too clear, I think it could be used to establish, or be evidence of the fact that the Defendant entered a Buick automobile, a 1969 Buick Electra, at that time and place as testified by the officer. I don't see any real value to it other than that.

"BY MR. INGMIRE: Except you can hear bits and pieces of the conversation too, Judge.

"BY THE COURT: You can hear some evidence—correction—you can hear some statements made by the last witness, Shirley Shields. I believe that's all, but the only purpose I can see in it would be to permit the jury to see whether or not the Defendant was present at that time; and for that purpose I am going to permit it to be shown and overrule the objection and grant an exception and request the bailiff to summon the jury. . . ." (Tr. 122–123)

We concur with the trial court's finding that the film was admissible. A proper foundation was laid for its admission by showing that it truly and correctly depicted the events and persons shown. Further, that the same was admissible for the purpose of corroborating the testimony of the prosecution's witnesses. See *Williams v. State*, Okl.Cr., 542 P.2d 554 (1975) and *Gorin v. United States*, 313 F.2d 641 (1st Cir. 1963).

In his final assignment of error, defendant asserts that the cumulative effect of all the errors constitutes fundamental error which entitles defendant to a new trial. We need only observe that we have previously found the first four assignments of error to be without merit and it necessarily follows that the fifth assignment of error is similarly without merit. The judgment and sentence is, accordingly, *AFFIRMED*.

BRETT, P. J., and BLISS, J., concur.