**Kabin DURANT, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–84–364.**

Court of Criminal Appeals of Oklahoma.

April 25, 1986.

Rehearing Denied May 19, 1986.

---

Gene Stipe, Anthony Laizure, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., Mary F. Williams, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Kabin Durant was convicted of Murder in the First Degree in Pittsburg County District Court and received a sentence of life imprisonment.

On the evening of November 12, 1982, appellant went to the home of his former girlfriend Lisa Roach. Visiting in her home was her then current boyfriend John Davidson. Ms. Roach told appellant to leave, and then Davidson told him to leave. When he did not, Davidson retrieved Ms. Roach's derringer from her bedroom and ordered appellant to leave. The evidence is conflicting, but appellant testified he was shot at this point and had only vauge recollections of what occurred until he woke up in the hospital a day and a half later.

Ms. Roach testified that no shots were fired until appellant returned approximately one-half hour later and shot his way through her locked door. She stated he then went into the den and shot Davidson a number of times. A police officer testified he shot appellant twice after appellant leveled his rifle at the officer two times. Appellant was stopped on the roadway after this officer shot two of his tires out to prevent appellant from going through a roadblock.

Appellant testified that although he could not entirely recall the events after he first left Ms. Roach's home, he could recall that his purpose in getting his guns and returning to her home was to protect her from Davidson.

■ As his first assignment of error, appellant complains he was denied his Sixth Amendment constitutional right to a fair trial because the trial court conversed with a juror outside the presence of his counsel. During voir dire, defense counsel asked all jurors whether they or anyone in their immediate family was involved with law enforcement. The juror in question, Pitchford, stated his father was a driver's license examiner, but that was all. The next day, Juror Pitchford went to the trial judge privately and told him that some fifteen years prior he had served as a correctional officer of some sort at the Oklahoma State Penitentiary and that he had forgotten about it when being questioned by defense counsel. The trial judge told the attorneys about the conversation, and appellant's counsel moved for a mistrial, which was denied. He did not request further voir dire, nor did he request that an alternate juror be seated in his stead. The jury had already been sworn to try the case and appellant complains he was thereby prevented from using a peremptory challenge to excuse the juror.

Appellant contends the juror was dishonest as to his question. However, our review of the record reveals that defense counsel's question of involvement in law enforcement was in the present tense. It was not stated in a way that would cause a juror to scrutinize all previous employment to answer the question. *See Allison v. State*, 675 P.2d 142 (Okl.Cr.1983). Thus, we do not agree that the juror's dishonesty caused a denial of a fair trial and appellant's reliance on *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), is unwarranted.

Further voir dire of this juror could have provided information as to the length and type of employment in question. These type of inquiries, in addition to those probing the issue of capacity to serve as a juror in a fair and unbiased manner, would have been beneficial.

■ While we have held it is error for the judge to have discussions with a member of the jury outside the presence of defense counsel, *Newton v. State*, 516 P.2d 827 (Okl.Cr.1973), we find here that appellant has failed to meet his burden of showing prejudice. *Campbell v. State*, 652 P.2d 305 (Okl.Cr.1982); *Broadus v. State*, 553 P.2d 515 (Okl.Cr.1976). The burden is on the accused to show prejudice on questions of juror conduct arising before the case is submitted to the jury. *Glasgow v. State*, 370 P.2d 933 (Okl.Cr.1962). Furthermore, the assigned error was not set forth in the

petition in error, and thus not properly before this Court. 22 O.S.1981, ch. 18, App., Rule 3.1(A)(6).

■ Appellant next complains that he was deprived of a fair trial because the prosecutor was allowed to make improper cross-examination of the expert witness called by defense counsel. Dr. W.G. Black, a clinical psychologist, was called by the defense and testified it was his opinion that appellant was insane at the time he shot Davidson.

The prosecutor was allowed to inquire of Dr. Black concerning his testimony in two prior unrelated court cases. We agree with appellant that this was improper cross-examination because the testimony was purely collateral. *Caffey v. State*, 661 P.2d 897 (Okl.Cr.1983); *Johnson v. State*, 386 P.2d 336 (Okl.Cr.1963). However, as in *Caffey*, we decline to modify or reverse his conviction on this error due to the overwhelming evidence of guilt.

■ Dr. Black brought to court with him a text book, the American Psychiatric Association publication called "Diagnostic and Statistical Manual," Third Edition. The prosecutor asked a number of questions regarding disorders described in the manual and asked how diseases came to be listed in the text. Appellant complains the prosecutor should not have been allowed to ask questions solely calculated to create prejudice against the witness.

The Court has long held that cross-examination outside the scope of direct examination is proper if such reasonably tends to explain, contradict, or impeach the witness' testimony. *Boling v. State*, 589 P.2d 1089 (Okl.Cr.1979). In the present case, the prosecutor took two hypothetical illnesses and asked the expert how the disorders came to be classified in the text book. While the illnesses discussed were collateral, the inquiries did relate to how the medical profession determined which disorders would be placed in the publication, ultimately an attempt to impeach the basis of the doctor's diagnosis. Our Evidence Code allows inquiries of an expert witness

regarding statements in an authoritative treatise. 12 O.S.1981, § 2803(18). The court did not abuse its discretion in allowing the examination. *Boling*, supra.

■ Next, appellant claims he was denied due process of law because the trial court did not require the State to give his counsel the entire statement of Lisa Roach. On the evening of the murder, Roach spoke with Oklahoma State Bureau of Investigation inspector B.G. Jones. He made notes of their conversation. Appellant, relying on *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), filed a pretrial motion to require the State to produce all evidence favorable to him, and specifically asked for her unsworn statement. The court did not require the State to turn the entire statement over to appellant, but rather compared the statement and the preliminary hearing transcript in camera and then ordered the State to produce a one page excerpt.

A criminal defendant is entitled to the sworn statements of witnesses made to the prosecution, 22 O.S.1981, § 749(A), but is not entitled to other pretrial statements except to the extent they fall within the purview of *Brady*, supra. *Brady* prohibits suppression by the prosecution of evidence favorable to the accused, stating:

[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

373 U.S. at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218. Our Evidence Code provides at Section 2105(A), Title 12 O.S.1981, that preliminary questions concerning the existence of a privilege or the admissibility of evidence are to be determined by the court. We hold that the trial court properly exercised its judicial discretion in excising irrelevant portions of Officer Jones' notes before requiring the State to produce them to appellant. Officer Jones testified that Ms. Roach neither read nor swore to the notes he made of their conversation. We have no reason to believe they con-

tained material, exculpatory evidence. Furthermore, Ms. Roach testified at preliminary hearing and at trial and was available for cross-examination regarding her statements. This assignment is without merit.

■ Finally, appellant contends that the State's evidence failed to prove beyond a reasonable doubt that he was sane at the time of the shooting. Appellant put on evidence at trial that he was shot on his first trip to Ms. Roach's home the night of the killing, and then introduced testimony from a psychologist that appellant was insane when he later returned and shot Davidson. Ms. Roach testified appellant was not shot on his first trip to her home.

■ A state of sanity is presumed in all criminal defendants, and the State may rely on this presumption. *Nauni v. State*, 670 P.2d 126 (Okl.Cr.1983). Appellant concedes that sanity is a question of fact for the jury, and recognizes that we will not disturb their finding if there is sufficient evidence to support it. *Bowers v. State*, 648 P.2d 835 (Okl.Cr.1982).

■ We find from a review of the record that there was sufficient evidence from which the jury could determine that appellant was sane. The testimony of an expert on mental capacity is not conclusive, and a jury is not required to adopt it. *Bowers*, supra. The State need not rebut this testimony with expert testimony supporting sanity. We find no error in this regard.

Finding no error warranting reversal or modification, judgment and sentence is AFFIRMED.

BRETT, J., concurs in results.

PARKS, P.J., dissents.

PARKS, Presiding Judge, dissenting:

I dissent from the decision in this case. I believe the conviction herein should be reversed and remanded for a new trial, based on the rationale contained in *Tibbetts v. State*, 698 P.2d 942, (Okl.Cr.1985).