**Frederick Clarence RAY, Jr., Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–84–248.**

Court of Criminal Appeals of Oklahoma.

July 15, 1988.

James T. Rowan, Asst. Public Defender, Oklahoma City, for appellant.

Michael C. Turpen, Atty. Gen., and Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

BRETT, Presiding Judge:

Frederick Clarence Ray, Jr., appellant, was tried by jury for the crime of First Degree Murder in the District Court of Oklahoma County in Case No. CRF-83-1155. Appellant was represented by counsel. The jury found appellant guilty of First Degree Manslaughter and set punishment at thirty (30) years' imprisonment. From this Judgment and Sentence, appellant appeals to this Court.

The body of Walter David Smith was discovered on February 15, 1983, near a muddy dump ground in Oklahoma County. Smith had been shot three times in the left side of the head at close range.

Subsequent police investigation revealed that Smith had been a drug dealer in the Oklahoma City area. Further investigation revealed that appellant was an associate in Smith's drug business. Oklahoma City police detectives contacted appellant at his apartment on February 18, 1983. Appellant explained that he had known Smith for approximately two years and had lived intermittenly with him. Appellant related further that a couple, Carey and Terry Rider, had also shared the apartment. Appellant admitted working for Smith, but stated that he had last seen Smith on the evening of February 9, 1983.

Pursuant to his consent, the officer's searched appellant's vehicle. The officers observed that the vehicle was covered with mud, but that it had clean, new tires. Inside the vehicle, the officers found some blood. The officers then advised appellant of his *Miranda* rights, and he agreed to talk voluntarily. Appellant claimed that the blood was from Smith's nose, the result of a recent fight. Appellant also explained the mud as being left from a recent rainstorm.

Subsequent to this interview, Carey Rider gave a sworn affidavit, in which he related that appellant and Smith had had a heated argument on the evening of February 9, 1983. The argument had continued throughout the evening until the pair left the apartment, apparently to conduct a drug transaction. Approximately thirty minutes later, appellant returned without Smith. He explained how he had killed Smith by shooting him three times. Appellant claimed that he dumped Smith's body in a junkyard and removed his jewelry and money.

Based on this affidavit, appellant was arrested in Weatherford, Oklahoma on February 21, 1983. Detectives were dispatched to Weatherford to transport appellant back to Oklahoma City. After being informed of his *Miranda* rights, appellant acknowledged that he understood those rights and signed a valid waiver of rights form. Upon departure, appellant requested a lawyer to determine if the officers had authority to take him from Weatherford. The officers advised appellant that he would have the opportunity to contact a lawyer once they returned to Oklahoma City. No further communication was made during the trip. Upon arriving at the police department, appellant was booked into jail and given an opportunity to call an attorney.

The following morning, February 22, 1983, appellant was taken from his jail cell and interviewed by three detectives. After appellant was advised of his rights, the officer proceeded to inform him of the evidence against him. Appellant broke down and admitted killing Smith. At this time, appellant stated that he thought he needed

an attorney. The officers informed him that all questioning would stop and that he would be allowed to contact an attorney or one would be provided for him. After regaining his composure, appellant replied that he did not want an attorney and that he would talk voluntarily. After his confession, appellant signed a typewritten statement.

Appellant claims in his first assignment of error that the trial court committed fundamental error by failing to suppress his confession. Appellant relies on *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1980), in which the United States Supreme Court held that when an accused has expressed his desire to remain silent or to deal with the police only through counsel, questioning must cease until counsel has been made available to him or unless the accused initiates further communication. Specifically, appellant claims that he invoked his right to counsel when he requested an attorney to see if he could be transported to Oklahoma City. He claims that this right was violated when the officers initiated further contact with him the following day.

■ Initially, appellant admits that he never invoked his right to counsel on February 22, 1984. Thus, the only issue is whether appellant effectively invoked his right to counsel the day before. In *Edwards,* the Supreme Court emphasized that it would be inconsistent with *Miranda* and its progeny for the authorities to reinterrogate an accused in custody if he has **clearly** asserted his right to counsel. We fail to find that appellant ever **clearly** asserted his right to deal with the police only through counsel.

This is not a case where the police failed to honor a decision of an accused to have counsel present during questioning. Appellant was repeatedly advised of his rights and had every opportunity to invoke his right to counsel. This Court cannot find that a request for an attorney to determine if one may be transported is the equivalent of an assertion of one's Fifth Amendment right to deal with the police only through counsel. We find this assignment to be without merit.

In his final assignment of error, appellant alleges that the trial court erred in not granting a mistrial when the defense was approached during trial by Michael and Brenda York, who claimed to have given exculpatory statements concerning the appellant to the police during the investigation. The Yorks were friends of Carey Rider. They claimed that Rider came to their apartment on the night of the murder bragging how he and appellant had killed Smith. The Yorks claimed that Rider had blood on his shirt and displayed jewelry and money that he claimed was taken from Smith's body. One week prior to trial, detectives delivered this information to the prosecutor, who admitted not providing it to the defense.

Appellant cites *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in which the United States Supreme Court held that the suppression by the prosecutor of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution. Appellant also relies on *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed. 2d 342 (1976), where the Supreme Court stated that there are situations in which evidence is obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request.

However, in *Bagley v. United States,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Supreme Court held that evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

The record in the case at bar reveals that Carey Rider testified at trial that he assisted appellant in disposing of the evidence. Furthermore, the Yorks were endorsed as witnesses on the information charging Rid-

er as an accessory, so the defense was put on notice that they might have relevant information.

 In *Wilhite v. State*, 701 P.2d 774 (Okl.Cr.1985), this Court held that unsworn statements of prosecution witnesses are considered to fall within the work-product privilege and are not discoverable. This privilege extends as well to police investigative reports. While the work-product privilege may not be applied in derogation of a criminal defendant's constitutional rights to disclosure of evidence favorable to the defendant, such evidence must be material to either guilt or to punishment before it is discoverable. *Brady*, 373 U.S. at 87, 83 S.Ct. 1197.

In the present case, appellant never claimed that he was not the one to have killed Smith. He admitted killing Smith. Moreover, his defense was that he shot Smith in the heat of passion, which the jury evidently believed. Therefore, under the guidelines of *Bagley*, we are unable to say that such evidence undermines our confidence in the outcome. This assignment of error is without merit.

For the foregoing reasons, the Judgment and Sentence is **AFFIRMED**.

BUSSEY, J., concurs.

PARKS, J., specially concurs.

PARKS, Judge, specially concurring:

I concur in the result reached by the majority. I write separately because the United States Supreme Court has refined the holding in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), by ruling that the invocation of right to counsel is limited to its purpose. *Connecticut v. Barrett*, 479 U.S. 523, ——, 107 S.Ct. 828, 832, 93 L.Ed.2d 920 (1987). Appellant requested assistance of counsel for the limited purpose of determining whether Oklahoma City police had the authority to transport him back to Oklahoma City from Weatherford on February 21, 1983. This request was clear, unambiguous, and less than all-inclusive. *Id.* at ——, 107 S.Ct. at 832. Oklahoma City police informed appellant he could call an attorney when they returned to Oklahoma City. The officers made no attempt to interrogate appellant during the drive back to Oklahoma City, and the promise that appellant would be given an opportunity to call an attorney was honored upon arrival at the Oklahoma City Jail. The following morning appellant responded to police questioning after expressly waiving his right to remain silent and his right to have an attorney present. Midway through his confession to the murder of Smith, appellant said, "I think I need an attorney." All questioning ceased, and appellant was again informed of his right to remain silent and his right to counsel. Appellant began to cry and said, "No, I'll go ahead and tell you all about it." Appellant initiated the further conversations with the police, and voluntarily and knowingly waived his right to counsel. *See Moran v. Burbine*, 475 U.S. 412, 422–24, 106 S.Ct. 1135, 1141–42, 89 L.Ed.2d 390 (1986); *Barrett*, at ——, 107 S.Ct. at 832–33.

With regard to appellant's claim that the prosecutor improperly suppressed exculpatory evidence by failing to deliver a police report to defense counsel, I would note that, for the reasons given by the majority, appellant's case is distinguishable from *Bowen v. Maynard*, 799 F.2d 593, 613 (10th Cir.1986). For the foregoing reasons, I concur.