Terry Glenn STANLEY, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–85–604.

Court of Criminal Appeals of Oklahoma.

Aug. 11, 1988.

Rehearing Denied Sept. 7, 1988.

Mark Barrett, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., Wellon B. Poe, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Terry Glenn Stanley, appellant, was tried by jury and convicted of First Degree Murder [21 O.S.Supp.1982, § 701.7], in Case No. CRF–84–219, in the District Court of Bryan County, the Honorable Joe C. Taylor, District Judge, presiding. The jury assessed punishment at imprisonment for life. Judgment and sentence was imposed in accordance with the jury's verdict. We affirm.

Until her death on August 5, 1984, B.F., aged 15, and appellant, aged 26, shared a meretricious relationship for a year. Despite her tender age, B.F. had been a prostitute before meeting appellant. Appellant's motive for murdering B.F. is graphically revealed by his confession to the O.S. B.I.: "[H]e said that she was only fifteen and she already sold her ass a bunch of times at the Hilltop [Motel] in Calera. And he said he didn't want her f..king all those people." [Tr. at 113] "He said she does that s..t to me and I love her. And I just can't stand it." [Tr. at 160–161]

On August 3, 1984, B.F. asked appellant to take her to a party at the home of Leon Brigman, a 62–year–old drug dealer. At the party, Brigman offered appellant $20 if he would permit B.F. to perform oral sex on Brigman. Appellant refused. Brigman then proposed that, since he was scheduled to start serving a prison sentence in a week, if appellant would permit B.F. to live with him during that remaining week of freedom, Brigman would deed over some property to her in exchange for her services. Brigman showed them the deed. Again appellant refused. Over the next three days, Brigman repeated his offer several times. Each time appellant refused and told B.F. he would not permit the arrangement. Additionally, Brigman proposed that B.F. start working for a madam named Ruth Ann.

During the three day party, appellant drank beer and permitted Brigman to inject him four or five times with a mixture of antihistamine and Talwin, an analgesic. Appellant testified the effect of the shots was "about like drinking beer to me. Just

without drinking it." [Tr. at 193] On the afternoon of August 5, 1984, appellant and B.F. left the party and drove to Lake Texoma, where they met appellant's brother and sister-in-law at about 8:00 p.m. The brother invited them for a swim. B.F. accepted the invitation, but said she needed to go home to change clothes. Appellant's sister-in-law testified appellant was not intoxicated at that time. When appellant and B.F. failed to arrive at the lake, appellant's brother drove his guests to their home in Denison, Texas.

At trial, appellant claimed he passed out, and when he awoke with the car parked on a country road, B.F. was in the front passenger seat, strangled. Her purse strap was tightly pulled around her neck, with the other end of the strap hooked over the door latch. In appellant's two oral and one written confessions, however, he made no mention of the purse strap. The autopsy report revealed B.F. died from hand strangulation.

Appellant drove to Denison, Texas, to talk to his brother, arriving there about 10:00 p.m. on the 5th, with B.F. slumped over in the passenger seat. The brother testified appellant appeared slightly intoxicated at that time. In his oral confession, appellant claimed his brother advised him to dispose of the body. Appellant drove to a marina at Lake Texoma, where he was surprised by a security guard who saw B.F.'s body in the front seat but thought she was asleep. Appellant then drove back to his brother's house in Calera, where he dumped B.F.'s body in a ditch alongside the road behind his brother's house.

On August 6, appellant's family searched the ditches behind the brother's house, found the body and called the sheriff. When the sheriff was unable to locate the body because of high weeds, the family led him to its location. Appellant was arrested the following morning by the Denison Police at Denison, Texas, and, after signing a *Miranda* waiver, appellant gave an oral and a written confession to the O.S.B.I. Four days later, appellant orally confessed again to the O.S.B.I. in the Bryan County jail.

At trial, appellant took the stand, testified in his own behalf, and raised the defense of intoxication. The trial court, over vigorous objection by the State, instructed the jury on the defenses of voluntary and involuntary intoxication. Additionally, the trial court, again over strenuous objection by the State, instructed the jury on the lesser included offenses of Second Degree Murder and First Degree Heat of Passion Manslaughter. The jury convicted appellant of First Degree Murder.

Appellant raises several assignments of error concerning the jury instructions, which we address first.

■ Appellant asserts two of the jury instructions, Numbers 16 and 18, deprived him of a fair trial in violation of the Due Process Clause of the Fourteenth Amendment. We observe initially that appellant failed to object to the instructions given or offer any instructions of his own, thereby waiving all but fundamental error. *See Maghe v. State*, 620 P.2d 433, 436 (Okla. Crim.App.1980).

Appellant's brother and sister-in-law evaded service of process and failed to appear at trial. The State presented the testimony of these witnesses to the jury by reading portions of the preliminary hearing transcript. The trial court instructed the jury, in Instruction No. 16:

In this case, the testimony of absent witnesses was read to you by way of transcript. You are instructed that you are not to discount this testimony for the sole reason that it comes to you in the form of a deposition. It is entitled to the same consideration, the same rebuttable presumption that the witness speaks the truth, and the same judgment on your part with reference to its weight, as is the testimony of witnesses who have confronted you from the witness stand.

Appellant argues instructing the jury that witnesses are presumed to speak the truth is fundamental error, relying on *United States v. Birmingham*, 447 F.2d 1313 (10th Cir.1971), and *United States v. Varner*, 748 F.2d 925 (4th Cir.1984). These cases hold it is "plain error" for a federal

court to instruct the jury that the law presumes a witness speaks the truth.

The State, on the other hand, relies on *Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973), which holds that the federal rule arises from an exercise of an appellate court's supervisory power to direct inferior courts "to refrain from giving the instruction because it was thought confusing, of little positive value to the jury, or simply undesirable." *Id.* at 146, 94 S.Ct. at 400.

On habeas corpus review of a conviction arising from state court, the proper "question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147, 94 S.Ct. at 400. "[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charges." *Id.* at 146–47, 94 S.Ct. at 400. "Before a federal court may overturn a conviction resulting from a state trial in which this instruction [that the law presumes witnesses speak the truth] was used, it must be established ... that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Id.* at 146, 94 S.Ct. at 400.

■ We strongly disapprove of any instruction which informs the jury that there is a presumption a witness speaks the truth and find it was error for the trial court to issue Instruction No. 16. An instruction which informs the jury that witnesses are presumed to speak the truth should *never* be issued in a criminal trial, and, in a close case, may constitute reversible error.

■ The question on appeal, however, is whether Instruction No. 16, under the facts and circumstances of this case, so infected the entire trial that the resulting conviction violates due process. We think not. The jury was charged fully and explicitly about the weight to be given to witness testimony, the presumption of innocence, and the State's duty to prove guilt beyond a reasonable doubt. *Id.* at 149, 94 S.Ct. at 401. We find the jury instructions, taken as a whole,

fairly stated the applicable law and Instruction No. 16 did not deprive appellant of a fair trial in violation of the Due Process Clause of the Fourteenth Amendment. This assignment of error is without merit.

■ Appellant next asserts Jury Instruction No. 18 deprived him of a fair trial. On direct examination, in his case in chief, appellant volunteered he had previously been convicted of felony DWI, second and subsequent offense, for which he received two years probation. [Tr. at 183] Accepting the invitation, the State cross-examined appellant on his former felony conviction. [Tr. at 321]. Appellant argues the State violated *Hawkins v. State*, 717 P.2d 1156, 1158 (Okla.Crim.App.1986), in which we found driving under the influence is not one of the offenses which may be used for general impeachment purposes under 12 O.S.1981, § 2609. Here, appellant, not the State, introduced this prior conviction into evidence. We find no violation of *Hawkins;* consequently, the court did not err by issuing Instruction No. 18 [OUJI–CR 824]. This assignment is meritless.

■ Appellant next asserts the trial court erred by failing to instruct the jury that appellant's defense of intoxication should, by itself, reduce the offense from First Degree Murder to First Degree Manslaughter. Appellant relies on *Williams v. State*, 513 P.2d 335, 339 (Okla.Crim.App. 1973), in which we found it is fundamental error not to instruct on manslaughter if there is any evidence which could reduce the crime from murder to manslaughter. We further found that, when an instruction on intoxication is appropriate, it is reversible error not to instruct the jury that intoxication can negate specific intent to kill. Appellant's reliance on *Williams* is misplaced, for in this case all the criteria of *Williams* were met: the trial court instructed the jury on the lesser included offenses of Second Degree Murder and First Degree Manslaughter; on the defenses of voluntary intoxication and involuntary intoxication; and that intoxication can negate specific intent to kill. This assignment is meritless.

Appellant next asserts the trial court erred by failing to instruct the jury on the lesser included offense of First Degree Misdemeanor–Manslaughter. Appellant relies on *Dawson v. State*, 647 P.2d 447, 449 (Okla.Crim.App.1982), in which we found "homicide is manslaughter in the first degree when perpetrated without design to effect death by a person while engaged in the commission of a misdemeanor." Appellant argues the underlying misdemeanor in this case is assault and battery.

The trial court fully instructed the jury on First Degree Heat of Passion Manslaughter. Appellant failed to request, orally or in writing, an instruction on misdemeanor-manslaughter. *Wauqua v. State*, 694 P.2d 532, 534 (Okla.Crim.App. 1985). Nor does appellant support his bald assertion that this homicide arose from commission of a misdemeanor, other than to offer evidence of remorse. "[W]here there is no evidence to support a lower degree of the crime charged or included offense, it is not only unnecessary to instruct thereon, but the court has no right to ask a jury to consider the issue." *Irvin v. State*, 617 P.2d 588, 596 (Okla.Crim.App. 1980). We find no record evidence to support appellant's argument that this homicide occurred during commission of a misdemeanor. This assignment of error is without merit.

For his final assignment of error, appellant asserts he was deprived of a fair trial because the prosecutor, in closing argument, expressed his personal opinion about appellant's defense of intoxication. Although several of the prosecutor's comments during closing argument were improper, we cannot say, in light of the entire record, that the comments were so prejudicial as to adversely affect the fundamental fairness and impartiality of the proceedings; therefore, reversal or modification is not required. *Hope v. State*, 732 P.2d 905, 907 (Okla.Crim.App.1987). Appellant is entitled to a fair trial, not a perfect one. *Jones v. State*, 610 P.2d 818, 820 (Okla. Crim.App.1980). Appellant received a fair trial. This assignment of error is without merit.

In light of the above, appellant's judgment and sentence should be, and hereby is, AFFIRMED.

BRETT, P.J., and BUSSEY, J., concur.