David Wayne SADLER, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–88–958.

Court of Criminal Appeals of Oklahoma.

Jan. 7, 1993.

Rehearing Denied Feb. 17, 1993.

Charles V. Williams, Sp. Prosecutor, Watonga, Richard E. Hovis, Hobart, Stephen D. Beam, Weatherford, Cindy G. Brown, Asst. Appellate Public Defender, Norman, for appellant.

Susan Brimer Loving, Atty. Gen., Steven S. Kerr, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

JOHNSON, Judge:

DAVID WAYNE SADLER, appellant, was originally charged with the crimes of First Degree Murder and First Degree Rape, in Case No. CRF–87–32 in the District Court of Greer County. A change of venue was granted and appellant was tried by jury for these crimes in Custer County, Case No. CRF–88–45. The jury returned a verdict of guilty and set punishment at life imprisonment for the murder charge and fifteen (15) years imprisonment on the rape

charge. The trial court sentenced the appellant in accordance with the jury's verdict and ordered the sentences to be served concurrently. From this Judgment and Sentence, the appellant has perfected his appeal.

Phillip Pat Adams, appellant's accessory and co-defendant, made a plea bargain with the District Attorney in order to avoid the death penalty. Adams pled guilty to First Degree Murder and received a life sentence with the understanding he would testify against appellant.

Adams testimony revealed that on the night of April 14, 1987, in Mangum, Oklahoma, appellant and Adams went out drinking. Adams drove the truck and appellant was a passenger. They bought four quarts of beer and drove out into the country to drink it. Later, they drove to Blair, Oklahoma, to visit a friend and buy some more beer and then went to Granite. After running out of money and beer, they discussed how they would get some more money and appellant asked Adams if he knew of any old ladies. They drove around the city of Granite and Adams pointed out Esther Steele's house, an elderly woman who had been his teacher.

Adams stated he dropped appellant off around the corner from Mrs. Steele's house. Appellant got out of the truck and grabbed a knife and put his socks on his hands. Adams drove the truck around and picked appellant up about an hour later. Appellant returned with a billfold and gave Adams ten dollars. Taking backroads, Adams drove back out into the county where he stopped to let appellant "get rid of the stuff". Appellant went into a bar ditch and returned a few moments later, bare-chested. Appellant put on some green coveralls that were in the truck.

The two men drove around until Adams lost control of the truck and rolled it over in a bar ditch. Appellant left the crash scene to find help. He was seen in Granite about 4:00 a.m. in the morning on April 15, 1987, by a passerby who took him to the police station. An ambulance was sent to the accident scene and both men were taken to Mangum City Hospital.

Later that day, a neighbor discovered Esther Steel's dead body in her bed. Testimony revealed she had been raped and stabbed to death. She had been stabbed three times in the chest and once in the neck.

The crime was investigated by the Oklahoma State Bureau of Investigation. Subsequently, both Adams and appellant were questioned, arrested and charged as co-defendants for the crime of burglary and the murder and rape of Esther Steele. Appellant confessed that he was with Adams on April 14 and 15, 1987, but denied being the rapist and murderer. Adams gave a sworn statement to the police on December 3, 1987, that implicated appellant as the rapist and murderer. He later pled guilty to being an accessory and received a life sentence. The details of these and other pertinent facts will be addressed as they relate to appellant's propositions of error.

Appellant's first proposition of error is that the trial court committed reversible error in not granting appellant's motion for a mistrial. Appellant claims that a mistrial was warranted because his due process rights, as recognized in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), were violated by the State's failure to turn over allegedly exculpatory evidence.

The evidence in issue is a technical report that contained the results of DNA testing on semen samples taken from the body of the victim and blood samples taken from appellant, Philip Adams, and the victim, Esther Steele. The State sent the samples to a private company that does DNA analysis in forensic cases. (Tr. 800) The purpose of having the tests run was to determine which co-defendant the semen belonged to, thus, providing proof on who committed the rape. (Tr. 800) The tests the OSBI were able to perform were not conclusive. (Tr. 800)

Appellant first learned of this test and report on the fourth day of trial while cross-examining Mary M. Long, a criminalist with the Oklahoma State Bureau of Investigation (OSBI). Upon discovery of this report, an *in camera* hearing was

held. When questioned about the report, Mary Long stated that she received the report on July 22, 1987, and the result of the test was inconclusive because the vaginal swab she sent for analysis did not contain sufficient DNA. She admitted that cervical swabs were also taken but, in her opinion, they were not of a good enough quality for the lab to work with because the sperm cells were deteriorated. Therefore, she did not send them in for testing when the results from the first test came back inconclusive.

The State admits they erred in not giving appellant a copy of the report. (Tr. 812; appellee's brief at 3.) Appellant specifically requested this type of report in his motion to compel discovery, filed in October, 1987. (O.R. 55–57). At the motion hearing in January, 1988, the trial judge ruled appellant was entitled to "any report, scientific, technical, or otherwise if it's exculpatory." (M.H. Tr. 35) Further, the trial judge required that the reports be exchanged at least one week prior to trial or else the report or the subject matter of the report would not be admissible. (M.H. Tr. 34) The trial judge ordered the State to submit its materials to a reviewing magistrate for determination of exculpatory materials. (M.H. Tr. 35–36) The report in issue was not submitted.

In the *in camera* hearing, the prosecutor claimed that, like defense counsel, he too had no previous knowledge of the report until Mary Long was cross-examined as the report was not in his file. Defense counsel moved for a mistrial and argued that appellant was prejudiced by the omission even though the result of the test was inconclusive. He claimed prior knowledge of the report could have allowed him to: (1) have hired an expert to analyze the report; (2) used it for comparison purposes; (3) be better prepared for cross-examination; (4) be able to cross-examine the people who collected and transported the semen; and (5) had their own DNA tests performed. (Tr. 809–810)

The trial judge overruled the motion for a mistrial finding the error harmless because: First, even if the report had been given to defense counsel, there were not enough specimens left to conduct additional tests because the first test consumed all of the specimen; second, the report was negative and no conclusion could be drawn from it and although the report might have been helpful to defendant, it was not detrimental to appellant.

To establish a *Brady* violation, a defendant must establish that the prosecution suppressed evidence that was favorable to him or exculpatory and that the evidence was material. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). To find reversible error, the appellant must meet the burden of showing: (1) the prosecution has actually suppressed evidence after that evidence has been requested by the defense; (2) the evidence was favorable to appellant's defense; and (3) the evidence is material either to the guilt of appellant or to his punishment. *Lay v. State*, 752 P.2d 823, 826 (Okl.Cr.1988), citing to *Moore v. Illinois*, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).

As there is no question that evidence was suppressed, the only question in the first inquiry is whether her actions are to be imputed to the State. This Court views police investigators, police officers, OSBI officials, independent and police technicians or test analyzers as State actors when their testimony or reports are used by the prosecutor against a defendant in a criminal case. *See Moore v. State*, 740 P.2d 731, 736 (Okl.Cr.1987); *Van White v. State*, 752 P.2d 814, 819 (Okl.Cr.1988); *Durant v. State*, 717 P.2d 1161, 1164 (Okl.Cr. 1986).

Recently, this Court has directly faced the issue of a prosecutor's source of information withholding evidence and the prosecutor having no knowledge of the withholding. *Pierce v. State*, 786 P.2d 1255, 1261 (Okl.Cr.1990). Unknown to the prosecution, an Oklahoma City Police Department chemist did not send all of the forensic evidence to an independent lab for testing. This was in direct violation of a court order. *Id.* We held the chemist's failure to send the evidence was the State's violation

of the court order. *Pierce* at 1261. Reversible error was not found because the appellant had knowledge two months before trial that the evidence was not sent to the lab and was under obligation to inform the court of the violation of the discovery court order. *Id.* The State's failure to send the evidence was not excused, but because appellant ignored the problem and did not ask for a continuance, he waived his right to have an independent examination of the evidence. *Id.*

■ Following *Pierce*, we find that Mary Long's action of withholding the existence of the DNA testing of the semen and blood samples is imputed to the prosecution and the State violated the discovery order. Additionally, we find that the State violated Section 11–2.1(a) of the *ABA Standards for Criminal Justice*, which was the standard for prosecutorial disclosure of evidence at the time of this case. *See Moore v. State*, 740 P.2d 731, 735–36 (Okl.Cr. 1987). As we have stated before "a criminal trial is not a game of hide and seek." *Moore*, at 735. This type of conduct is not condoned.

Looking at the second prong of the *Brady* analysis, we agree with the trial judge that the evidence was not exculpatory or favorable. Like the blood test that was admitted into evidence, the DNA test was inconclusive and neither eliminated nor concluded that the semen belonged to the appellant, the co-defendant or a third person. The omitted test was simply cumulative evidence of the blood test.

■ Looking at the last *Brady* inquiry, we cannot say that the suppressed evidence was material to appellant's guilt or punishment. Materiality is viewed from the context of the whole record. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *United States v. Bagley*, 473 U.S. 667, 105 S.Ct.

3375, 87 L.Ed.2d 481 (1985); *accord Ray v. State*, 758 P.2d 823, 825 (Okl.Cr.1988).

■ A review of the record indicates that the evidence presented at trial that showed appellant's guilt was co-defendant Adams' testimony against appellant, admissions made by appellant to a cellmate, and hairs microscopically consistent with appellant's. Other than the hairs, none of the forensic evidence presented was conclusionary. Thus, we fail to see how the outcome of appellant's trial would have been different if he had had access to this report earlier. The trial judge chose to believe the criminalist when she stated that there were no other sperm samples that could be tested and what was submitted was consumed. Due process considerations require the State to allow the accused an opportunity to have samples independently tested, but this rule does not extend to situations in which the sample is necessarily consumed in testing. *Moore*, 740 P.2d at 736. Accordingly, although the State's withholding of the DNA report, via the OSBI criminalist's actions, was error, this omission of a cumulative, inconclusive test does not undermine our confidence in the outcome of this case. This proposition is denied.

In his second proposition, appellant claims that the State failed to independently corroborate co-defendant and accomplice Phillip Adams' testimony against appellant. We disagree.

■ While the general rule is that testimony of an accomplice must be corroborated with evidence, that standing alone, tends to link the defendant to the commission of the crime charged; *see Howard v. State*, 561 P.2d 125, 132 (Okl.Cr.1977); testimony of an accomplice does not require corroboration as to all material respects. *Johns v. State*, 742 P.2d 1142, 1146 (Okl.Cr. 1987). All that is required is for there to be at least one material fact of independent evidence that tends to connect the defendant with the commission of the crime. *Id.* at 1146. Circumstantial evidence can be adequate to corroborate the accomplice's testimony. *Pierce v. State*, 651 P.2d 707, 709 (Okl.Cr.1982).

In this case, the testimony of Philip Adams was corroborated by circumstantial evidence. Eyewitness testimony identified two men in a truck in the area of the victim's house. The truck fit the description of the truck that both Adams and appellant admitted to driving around in. Additionally, the hairs found on the victim's bedding corroborate Adams' story. This assignment is without merit.

Appellant's third and fourth propositions both involve the circumstances surrounding the taking of his confession. On May 20, 1987, an information was filed and a warrant was issued for appellant's arrest. Later that afternoon, appellant was arrested and given his *Miranda* rights. Appellant was taken to the police station and that evening two OSBI officers arrived to question him. Appellant was taken to an investigation room where he was given his *Miranda* rights again. Appellant waived these rights by signing a waiver of rights form. One of the officers brought appellant a cup of coffee and told appellant that Phillip Adams had confessed to his involvement in the murder and had pointed a finger at appellant as being the murderer. At this point, appellant asked for a lawyer.

The officers immediately terminated the interview and told appellant that any further communication without his lawyer present would have to come from the defendant himself. The officers left the appellant in the interrogation room to finish his coffee.

Approximately three to five minutes later, appellant opened the door and told the officers that he wanted to talk to them. Again, the appellant was given his *Miranda* rights. Appellant signed a new waiver form and told the officers his version of the events and pointed a finger at Adams as being the murderer.

In his third proposition, Appellant asserts his Fifth Amendment right against self-incrimination was violated when OSBI agents questioned him after he had invoked his right to counsel. Thus, appellant claims that the trial court erred in not suppressing the confession and reversal of his conviction is required.

Confessions taken after a defendant has invoked his right to counsel can be admissible in court against a defendant only if it was the defendant who initiates further communication, exchanges, or conversations with the police and the defendant knowingly and intelligently waived the right he had invoked. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Smith v. Illinois*, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984); *accord Walker v. State*, 795 P.2d 1064, 1067 (Okl.Cr.1990).

The prosecution bears the burden of proving whether the waiver was knowing and intelligent under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities. *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d. 405, (1983).

Appellant admits he initiated contact and approached the officers, but based on *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), he argues that being left in the interrogation room after he had invoked his right to silence put him in an "interrogation environment". Thus, he asserts that the initial interview never ceased and appellant had no choice but to talk to the OSBI agents. Therefore, he was interrogated after he invoked his rights.

The two-pronged test for determining whether a person in custody is in an "interrogation environment" is: First, whether the suspect was subjected by the police to words or actions that the police should have known were reasonably likely to elicit an incriminating response from him. *Innis*, 446 U.S. at 303, 100 S.Ct. at 1690; and second, was the suspect's incriminating response the product of the police's words or actions. *Id.*

When viewed under the totality of the circumstances, we do not find that the officers statement to appellant that he had to initiate any further conversation was the type of statement the officers knew was reasonably likely to elicit an incriminating

response. The officers told appellant he had to initiate conversation and they had told him that Adams had implicated him as the murderer. This statement was likely to elicit a response, but was proper, as appellant had waived his rights and had not invoked his right to counsel. Viewing the scenario in this context, we do not find that appellant's decision to come out of the room and tell the officers that he wanted to talk to them was a product of police words or actions spoken *after* appellant had invoked his right to silence.

Appellant further argues that his waiver of rights, after he had requested counsel, was not knowing and intelligent under the totality of circumstances because the OSBI officers did not tell appellant what he needed to do to have an attorney appointed. He claims he should have been returned to his cell, or told how and when an attorney would have been appointed for him.

If this was a situation where the police had left a suspect in the interrogation room for hours, the circumstances might point to police coercion by not giving such information. But, appellant was only left in the room for three to five minutes. We find the State has met its burden of proving the waiver of the right to counsel was voluntary and intelligently made and that appellant initiated the contact with the OSBI agents with a direct request to talk to the officers. *See Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). The trial court did not err in allowing this confession to be presented to the jury.

In his fourth proposition, Appellant asserts his Sixth Amendment right to counsel was violated because he did not knowingly and intelligently waive his right to have counsel present during his post-arrest questioning because he had not been informed of the particulars of the charges against him. Specifically, he claims that because he was only informed by the OSBI officers that he was arrested and charged with the murder of Esther Steele, rather than being told that formal charges were filed against him for first-degree murder,

first-degree rape and first-degree burglary, his waiver was not intelligent and knowing. Thus, he claims the trial court erred in not suppressing his confession.

Appellant is correct that his Sixth Amendment Right to counsel arose when the information was filed. *Patterson v. Illinois*, 487 U.S. 285, 290, 108 S.Ct. 2389, 2394, 101 L.Ed.2d 261 (1988). But, there is no constitutional requirement that an accused be told the *particulars* of the crime he has been charged with before a Sixth Amendment waiver can be considered knowing and intelligent. Indeed, the United States Supreme Court has expressly rejected the idea that additional warnings or discussions with an accused are required before a Sixth Amendment waiver can be effectuated for post-indictment questioning. All that is required are *Miranda* warnings. *Patterson v. Illinois*, 487 U.S. 285, 295–96 at n. 8, 108 S.Ct. 2389, 2396–97 at n. 8, 101 L.Ed.2d 261 (1988).

Appellant was given his *Miranda* rights. Additionally, the police told him he was charged with the murder of Esther Steele, which appraised him of the seriousness of the crime he was being accused of and gave him warning of what he was being questioned about.

To determine whether a waiver of Sixth Amendment rights during a post-indictment questioning is voluntary, the inquiry is, "whether the accused was made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forgo the aid of counsel." *Patterson v. Illinois*, 487 U.S. at 292, 108 S.Ct. at 2395.

Since appellant was given *Miranda* warnings, which informed him of his right to have counsel present and the consequences of talking to the OSBI agents, we find his waiver was knowing and intelligent. *See Patterson*, 487 U.S. at 290, 108 S.Ct. at 2394. This proposition is denied.

In his fifth proposition, appellant claims he was denied his Oklahoma Constitutional right to a preliminary hearing on all the charges presented in the amended information. Originally, appellant was charged by

information of acting in concert with Philip Adams and committing the crimes first-degree murder by malice aforethought or felony-murder, first-degree rape, and first-degree burglary. Appellant was bound over for trial on these charges. Subsequently, the State amended the information and charged appellant with the crimes acting alone.

While it is correct that the Oklahoma Constitution provides that "no person shall be prosecuted for a felony by information without a hearing before a magistrate, or having waived such preliminary examination", Okla. Const. art. 2, § 17; *Thrasher v. State*, 734 P.2d 324, 327 (Okl.Cr.1987). Title 22, Section 304, permits the State to amend an information, in matter or substance, where it can be done without material injury to the defendant. 22 O.S.1981, § 304; *Battle v. State*, 515 P.2d 269, 272 (Okl.Cr.1973). The fact that an information was amended does not require a new preliminary examination if it does not substantially alter the charge or necessitate information on new issues. *Grizzle v. State*, 559 P.2d 474, 479 (Okl.Cr. 1977). It is also well established that a defendant can waive both a preliminary hearing on an amended information, and his right to object to any defects in the charge. *Thomas v. State*, 744 P.2d 974, 974–75 (Okl.Cr.1987).

In this case, appellant waived any right to have a new preliminary examination or challenge the information as the record is void of any objections and appellant entered a plea to the amended information. *Thomas* at 976. Additionally, we note that even if objections had been made, a new preliminary examination would not have been necessary as the thrust of the charge in the preliminary examination and the amended information was the same: the killing of a human being with malice aforethought or by felony-murder. This proposition is without merit.

In his sixth and seventh propositions, appellant takes issue with a number of jury instructions. He claims the trial judge erred because he gave certain instructions and because he did not give other instructions. Appellant did not submit or make a request for any of the "omitted" instructions, nor object to any of the instructions that were given. Thus, our review of each instruction will be limited to fundamental error only.

First, appellant claims the trial judge should have given, *sua sponte*, an instruction requiring the jury to believe the exculpatory statement of Mr. Sadler unless the statement was disproved by the State. We do not find appellant's statement to be such that would have acquitted him if believed, but rather a contention of his innocence. *See Knott v. State*, 432 P.2d 128 (Okl.Cr.1967).

Second, appellant claims the trial judge should have given Oklahoma Uniform Jury Instruction CR–205, which concerns when a person's presence at a crime scene makes them criminally culpable. Again, appellant made no request for such instruction. Determination of which instructions shall be given to the jury is a matter within the discretion of the trial court, provided that the instructions given fairly and correctly state the applicable law. *Russell v. State*, 763 P.2d 1180 (Okl. Cr.1988); *Nunley v. State*, 660 P.2d 1052 (Okl.Cr.1983). The failure to give this instruction was not fundamental error.

Third, appellant claims an instruction that voluntary intoxication is a defense to the specific intent element of the felony-murder and malice aforethought murder theories of the case and should have been given *sua sponte* by the trial judge. While there was evidence presented at trial that appellant was intoxicated during the commission of the crime, there was also evidence presented that appellant knew what he was doing. No evidence was presented that indicated appellant had been unable to form the requisite intent. *See Lloyd v. State*, 654 P.2d 645, 646 (Okl.Cr.1982). We find no fundamental error occurred.

Fourth, appellant again claims a special instruction on the impeachment of Anthony Hinch should have been given. Mr. Hinch was in the Greer County Jail and

a cellmate of appellant. He testified that appellant had told him that he committed the murder and rape. Such instruction was not necessary as the jurors were generally instructed about the credibility of witness, including interest in the result of the trial and bias or prejudice. Likewise, they were instructed to "suspect" any testimony from an informer. Additionally, Mr. Hinch's testimony at trial clearly informed the jury that he was a criminal and in jail.

■ Fifth, appellant claims the trial judge erred by giving the jury instruction OUJI–CR 426, which states:

No person may be convicted of murder in the first degree unless his conduct caused the death of the person allegedly killed. A death is caused by conduct if the conduct is a substantial factor in bringing about the death and the conduct is dangerous and threatens or destroys life. (O.R. 393)

Appellant claims the instruction was confusing and could have mislead the jury into believing that appellant could be convicted of first-degree murder for being intoxicated. We agree that it would have been better for the trial judge not to have given this instruction as it deals with the issue of whether a defendant's actions caused a death and appellant did not dispute the victim's cause of death, but rather claimed he did not commit the murder at all.

■ But, in light of the fact that appellant did not object to this instruction and under the facts and circumstances of this case and the instructions that were given, we do not find that this error confused the jury in believing appellant was guilty of first-degree murder solely because he had been drinking. Jury instructions are not to be considered in isolation but as a unit, and after such consideration, if the totality of the instructions fairly and accurately state the applicable law, they are sufficient. *Newbury v. State*, 695 P.2d 531 (Okl.Cr. 1985); *Stanley v. State*, 762 P.2d 946, 949 (Okl.Cr.1988). This error did not reach the level of fundamental error.

Appellant's last proposition asserts he was denied a fair trial because of prosecutorial misconduct. Specifically, he claims at the close of the first stage of the trial, the prosecutor improperly commented on facts not in evidence, gave his personal opinion, appealed to the jurors as taxpayers in urging conviction, appealed to the passions and prejudices of the jurors and sought sympathy for the victim. As only one of the complained of comments goes beyond the "wide range of acceptable argument", *McCaulley v. State*, 750 P.2d 1124, 1128 (Okl.Cr.1988), we will only address that comment.

■ We agree that prosecutor improperly gave his personal opinion and commented on facts not in evidence when he stated:

It's my theory of the case, ladies and gentlemen, that the next day this defendant came out and retrieved the evidence. Mind you, what I say is not evidence and you're not to consider it as such. This is my theory of the case. I submit Sadler came out there and knew exactly where the evidence was and he retrieved it and it's not there anymore. (T.R.1013)

This comment was improper and was not as the State submits, "comments on the evidence in a time-honored fashion". But, as appellant admits, no objections were made to any of the comments. Thus, appellant has waived all but fundamental error. *Carol v. State*, 756 P.2d 614 (Okl.Cr. 1988). In looking at the whole record and considering the fact that the death penalty was sought, but the jury returned the lesser verdict of life, we cannot say that this error affected the outcome of the case.

Accordingly, for the foregoing reasons, the Judgment and Sentence of the trial court is AFFIRMED.

LUMPKIN, V.P.J., and BRETT, J., concur.

LANE, P.J., concurs in result.

PARKS, J., not participating.

LANE, Presiding Judge, concurring in result.

In deflecting the appellant's argument that he was entitled to an instruction on

the State's burden to disprove his exculpatory statement the majority states, "We do not find [the] statement to be such that would have acquitted him if believed, but rather a contention of his innocence." I can not agree.

Appellant told the police that when he and Adams drove up to the home which was to be broken into he gave Adams his socks and sweatshirt and waited, intoxicated, outside while Adams went in. He further stated Adams had blood on him when Adams returned to the truck. This statement fits squarely into the definition of exculpatory statement set forth in *Knott v. State*, 432 P.2d 128 (Okl.Cr.1967). It is tangible; it is affirmative; it expresses a factual matter capable of specific disproof; and it is *not* merely a recitation of innocence embroidered in a plea of not guilty. Id. at 130.

I am greatly disturbed that so many times trial counsel drops the ball when the trial turns to the critical stage of instructing the jury. Unfortunately the trial court often gets little assistance on this matter, only to have errors routinely asserted on appeal. In this case, appellate counsel urges the error is fundamental for it deprived the appellant of his defense.

While the trial court could have, and perhaps should have given the standard instruction covering this matter, Oklahoma Uniform Jury Instruction–Criminal # 816, the failure to do so did not strip the defendant of his defense. Within the instructions as a whole the jury was told it must weigh conflicting evidence and the State must prove each element of the crimes beyond a reasonable doubt.

Counsel is well aware, no doubt, that error which has not been preserved by trial counsel must be fundamental to warrant reversal. Fundamental error goes to the foundation of the case, to the determination of the elements of the crime or the range of punishment. Given the full set of

instructions used in this case, the error, while real, is not fundamental.