Ernie L. HOLMES, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–17530.

Court of Criminal Appeals of Oklahoma.

Dec. 20, 1972.

Rehearing Denied Jan. 24, 1973.

Jones, Atkinson, Williams, Bane & Klingenberg, Enid, for appellant.

Larry Derryberry, Atty. Gen., Raymond Naifeh, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Ernie L. Holmes, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Comanche County, for the offense of Rape in the First Degree. His punishment was fixed at a term of not less than five (5) nor more than fifteen (15) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Everette Hester testified that at approximately 4:00 a. m. on June 2, 1971, the defendant came into her bedroom through the window. She screamed and the defendant grabbed her around the neck and hit her in the center of her head. Her nine-year-old girl and eighteen-month-old baby were in the bed with her. The defendant told her not to scream and to go into the living room. He then directed her to get on the sofa and take off her panties. She testified that she did not try to resist him because "he had already hit me twice." She testified that they had intercourse which lasted until approximately 8:00 a. m. when two school children knocked on the door. The defendant reached his climax, pulled her up, slung her into a chair and ran out the back door. She ran screaming outside in her nightgown and knocked on the door of her neighbor, Mrs. Baker.

Sergeant Jerry Butler of the Lawton Police Department testified that at approximately 8:20 a. m. on the morning in question he answered a call to Mrs. Hester's residence. She seemed "quite upset and was crying and had been crying it appeared for some time. Her eyes were quite red and swollen." (Tr. 31) He inspected the house and observed muddy footprints on the window sill of her bedroom and mud inside the bedroom. He further observed recent footprints in the mud outside the window. The window was open and the screen was lying against the house.

For the defense, Richard Smart testified that he lived approximately 100 yards from Mrs. Hester's house. At approximately 6:00 a. m., he went out to his yard to cut some grass with a hoe. While he was working in the yard, he heard someone hollering and observed Mrs. Hester in the yard crying. He walked over to where she was standing and asked her what happened. She stated that someone had broken into her house. He testified that he did not at any time see anyone running from the area and that he had a clear view of the area at all times.

Earnice Pilgrim testified that she observed the defendant on June 1 at a party at Betty Jean Brewer's house. The defendant consumed alcoholic beverages and took some "red devils" which were sleeping pills. The defendant came to her house somewhere around 2:00 a. m. on the morning of June 2. At around 3:30 a. m., she went to Chickasha, leaving the defendant and Clint Wilson at her apartment.

Ruth Austin testified she was employed as a records clerk for the Comanche County Memorial Hospital and identified records from the hospital.

Dr. Robert Hillis testified he examined the prosecutrix in the Emergency Room of the hospital. She claimed that "she had been assaulted and raped." He testified that she was pregnant and that there was "no way to determine at this time whether she has had relations." A smear failed to reveal spermatozoa. There was no evidence of any trauma to the vulva or vaginal area.

On cross-examination, he testified that she was very excited and upset and had a bruise on her forehead. He could not say "one way or the other with any certainty

at all whether or not she was raped." He further testified that a person that has consumed alcoholic beverages and sleeping pills "would have had difficulty having an orgasm and, therefore, might maintain an erection for a prolonged period of time." (Tr. 62)

Udene Baker testified that she lived next door to the prosecutrix in the other side of the duplex. At approximately 8:15, the prosecutrix ran outside hollering "there he goes." She ran outside and did not see anybody.

On cross-examination, she testified that Mrs. Hester's eye was black, her mouth was bleeding a little bit, and she was hollering and crying.

On re-direct examination, she testified that the walls between the duplexes were thin and that she did not hear anyone scream in Mrs. Hester's apartment.

Janice Holmes testified that she saw the defendant about 12:30 a. m. She next observed him at approximately 7:30 the next morning when he came home. The defendant did not have mud on his boots and was intoxicated.

Gloria West testified that she observed the defendant walking toward his house about 7:30 a. m. The defendant was walking in a normal gait and appeared to be intoxicated.

Clint Wilson testified that he first saw the defendant about 2:30 on the afternoon of June 1 at Mrs. Brewer's house. At that time, the defendant was drinking beer and wine. At approximately 6:00 p. m., he and the defendant consumed a half-pint of whiskey. He later saw the defendant, at about 3:00 the following morning, at Mrs. Pilgrim's house. The defendant was lying on the divan either intoxicated or asleep. He left the apartment about 3:30 a. m. to go get some chicken. When he returned at approximately 4:30 a. m., the defendant was no longer there.

Betty Brewer testified that the defendant came to a barbecue at her house that evening. She observed the defendant drinking beer, wine and whiskey. She further observed the defendant take two seconal tablets.

The defendant asserts two propositions; the first being "the trial court committed error in overruling defendant's demurrer to the evidence" and the second being "the verdict is not sustained by sufficient evidence and is contrary to law." We are of the opinion that both propositions are without merit.

In Strunk v. State, Okl.Cr., 450 P.2d 216, we stated in the sixth paragraph of the Syllabus:

"The old rule of 'resistance to the uttermost' is obsolete, and is repudiated by the more modern authorities. The law does not require that the woman shall do more than her age, strength, and surrounding facts, and all attending circumstances make it reasonable for her to do in order to manifest her opposition. In reference to the degree of resistance required, the jury should be instructed that it is necessary, not that the prosecutrix should have made the uttermost resistance, but that she has made such resistance as she was capable of making at the time."

We have repeatedly held that a conviction for rape may be had on the uncorroborated testimony of the prosecutrix, or on slight corroboration, where the testimony of the prosecutrix is not inherently improbable or unworthy of belief. Gaines v. State, Okl. Cr., 267 P.2d 612. In Haga v. State, Okl. Cr., 422 P.2d 221, we stated:

"However, this rule has been limited to the effect that we will carefully examine the record in cases of this character, which we have done in this case, to see that the evidence of the prosecutrix is clear and convincing, and is not inconsistent, incredible or contradictory. It is the exclusive province of the jury to weigh the evidence and determine the

facts, and where the verdict is based on probable testimony, the reviewing court will not interfere with the verdict, though there is a sharp conflict in the evidence."

We have carefully examined the record and are of the opinion that the testimony is not inconsistent, incredible or contradictory. Defendant's own witness, Dr. Hillis, testified that it was quite possible that one who had taken seconals and intoxicating beverages would have difficulty having an orgasm and, therefore, might maintain an erection for a prolonged period of time. The prosecutrix' testimony that the defendant came through the window v. as corroborated by Sergeant Butler's testimony concerning his observations at the scene. Her testimony concerning being struck was corroborated again by several of the defendant's own witnesses. The judgment and sentence is, accordingly, affirmed.

BLISS and BRETT, JJ., concur.