Gary Lee TAYLOR, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–268.

Court of Criminal Appeals of Oklahoma.

Oct. 15, 1976.

 

William R. Burkett, Linn, Helms, Kirk & Burkett, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Kenneth Lisle, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Gary Lee Taylor, hereinafter referred to as the defendant, was charged, tried and convicted in the District Court, Woods County, for the offense of Unlawful Delivery of Marijuana in violation of 63 O.S.1971, § 2–401, ¶ B2. In accordance with the verdict of the jury the defendant was sentenced to a period of two (2) years in the custody and control of the Department of Corrections, State of Oklahoma, and fined Two Hundred and Fifty Dollars ($250.00). (Case No. CRF–73–58) From said judgment and conviction the defendant has filed this timely appeal.

At the trial, Ted S. Jones testified that he was on duty as Chief of Police of Waynoka, Oklahoma, on October 9, 1973. On this date Herman Marion contacted him by telephone and asked him to come to Park's Hardware Store, in Waynoka, and bring a marked twenty dollar bill. A few minutes later a meeting was held between the Chief and the witness Marion at which time Marion informed the Chief that he could make a buy from "two boys from Woodward." At that time the Chief searched Marion and found nothing of significance. He then furnished Marion with a marked twenty dollar bill. The bill was marked with the letters N O K A, being the last four letters in Wyanoka. At this point the Chief returned to the police station and waited. Approximately one hour later, Marion came back to the police station and gave Chief Jones what he called a lid of marijuana in a cellophane container or baggie. Marion also furnished the Chief with a description of the automobile and a brief description of occupants therein. The Chief then proceeded in his own vehicle to look for the automobile, found same, but subsequently lost the car. The Chief then telephoned to the Woodward County Sheriff's Office and requested that if they should find said automobile to stop and retain it.

On cross-examination, Chief Jones testified that he had known Herman Marion for approximately three (3) months, prior to October 9, 1973. Chief Jones stated that this relationship was very casual and that he had no information in regard to Marion's reliability as an informant or to his past record.

The State's second witness, Herman Lee Marion, testified that in 1962 he received a one (1) year suspended sentence on a bogus check charge from Grady County; and in 1971 he was sentenced to five (5) years in the State Penitentiary for forgery and bogus check charge from Canadian County, Oklahoma. He stated that he in fact served over two (2) years in the State Penitentiary at McAlester. The witness then went on to say that during the morning hours of October 9, 1973, he was searching for some help with labor in the construction business when he encountered one Bill Brown coming around the curve on the highway just north of Waynoka. He said he had known Brown for approximately a month. He stopped Brown who was accompanied by the defendant, and one other individual in this case, and asked Brown if he would like to work that day. Brown declined to work. At this point according to the witness Marion, Brown asked if Marion would like to purchase some marijuana. (Tr. 32). The witness testified that he did not know the defendant Taylor at that time. Before departing arrangements were made for him to meet Brown, the defendant, and another person at a house in Waynoka. The witness Marion had left the three men and went into Park's Hardware Store and called Chief Jones. At that time Chief Jones came to the hardware store, searched Marion, and gave him

the marked twenty dollar bill, previously described. The witness Marion identified State's Exhibit No. 1, as the twenty dollar bill he received from Chief Jones. Upon leaving Park's he went to Opal Treece's house, where he met Brown and the defendant and the other person named Chance. Brown then introduced him to the defendant and Chance and then left. Marion and the two individuals then went for a drive in the country for the purpose of testing the marijuana. At that time the three individuals smoked a "joint." The witness testified that he had smoked marijuana before, mostly while in the State Penitentiary at McAlester, and that in his opinion the substance was marijuana. A conversation was then had concerning the sale and purchase of a lid of marijuana, at which time the defendant, Taylor, handed a lid to the back seat where Marion was riding and the witness Marion then handed the defendant a twenty dollar bill. The witness subsequently identified State's Exhibit No. 2, as the bag of marijuana that the defendant had sold him. After returning to Waynoka, he went to the police station and turned the marijuana over to Chief Jones.

The next witness for the State was Officer Ron Stevens. Officer Stevens testified that he was the Chief of Police of Moreland, Oklahoma and that on October 9, 1973, he received information that the Woodward County authorities were looking for a '61 Chevrolet bearing an Oklahoma WW–4411 license tag. He testified that while sitting at a Conoco Station in Mooreland, he saw the automobile pass through the City of Mooreland, Oklahoma. He then notified Chief Sunderland of the Woodward Police Department who instructed Officer Stevens to follow the automobile and keep the subject in view. Officer Stevens then testified that the defendant's automobile was stopped about a mile east of the town of Woodward, Woodward County, Oklahoma at which time the occupants were arrested and their persons searched. Officer Stevens also testified that he observed Chief Sunderland of the Woodward Police Department "reach in and get some marijuana out of the car." Officer Stevens further testified that he saw a twenty dollar bill which was seized from the person of one of the defendants.

The next witness for the State was Officer Don Sunderland. Officer Sunderland testified that he was the Chief of Police of Woodward, Oklahoma. Chief Sunderland identified a baggie which he had taken from the vehicle. Chief Sunderland also testified that he advised the defendant of his Miranda rights.

The next witness for the State was Calvin Rutledge. Mr. Rutledge testified that on October 9, 1973, he was the Undersheriff of Woodward County, Oklahoma. He testified that he participated in the stopping of the defendant's vehicle and that it was he who actually placed the defendant under arrest. The former deputy sheriff Rutledge then identified State's Exhibit No. 1, which was the marked twenty dollar bill. The former deputy sheriff Rutledge identified the twenty dollar bill as coming from the right front pocket of the defendant's trousers.

The next witness for the State was Mr. Arlo Darr who testified that he was the Chief of Police of Alva, Oklahoma. Mr. Darr testified as to the chain of custody of the State's Exhibits and that he mailed the exhibits to the State Crime Bureau via the United States mail.

The final witness for the State was Mr. Donald Flynt of the Oklahoma State Bureau of Investigation. Mr. Flynt testified that he was a chemist with that bureau and had been employed as such for some time. After being qualified as an expert, Mr. Flynt testified that in his opinion the items contained in State's Exhibits Nos. 2 and 3, were marijuana, i. e., cannabis sativa.

After introducing all the State's Exhibits into evidence the State rested.

The defendant took the stand in his own behalf and testified that he and his com-

panion, Mr. Chance, were in Waynoka to look for and meet some girls. He further testified that Mr. Bill Brown was his cousin. He testified that he observed the meeting between Mr. Brown and the witness Herman Marion which took place outside of his hearing. The defendant then returned with Mr. Brown to Mr. Brown's mother-in-law's house in Waynoka where some thirty minutes later Mr. Marion again appeared on the scene. After driving around toward the back of the house, Mr. Brown left, and, according to the defendant, Mr. Marion asked to see if he had any marijuana. After some conversation a marijuana cigarette was smoked by the three occupants of the car. The defendant then stated that Marion asked the defendant if the defendant wanted to sell him any marijuana. The defendant could not remember the exact words used. The defendant then stated that he told Marion that he did not have it for sale because he did not have that much and he did not sell it. The defendant then testified that he handed a baggie of marijuana to Marion who was in the back seat and that Marion threw some money up in the front seat. The defendant then testified that he picked up the twenty dollar bill from the seat of the car as the automobile approached a service station.

On cross-examination, the defendant admitted to possessing the marijuana. The defendant then stated that he handed a baggie of marijuana to the witness Marion in the back seat of the automobile.

On re-direct the defendant then denied that he had ever sold marijuana to anyone.

For his first assignment of error, the defendant urges that trial court erred in overruling the defendant's motion for directed verdict on the grounds of entrapment. Specifically, that no sale would have been made had not the State's "agent," approached the defendant. However, a careful examination of the record submitted to this Court, does not contain sufficient facts from which we could find, as a matter of law, that there was entrapment to the extent which would require or justify a directed verdict in favor of the defendant.

"One who is instigated, induced, or lured by an officer of the law or other person for the purpose of prosecution, into the commission of a crime which he had otherwise no intention of committing may avail himself of the defense of 'entrapment.' Such defense is not available, however, where the officer or other person acted in good faith for the purpose of discovering or detecting a crime and merely furnished the opportunity for the commission thereof by one who had the requisite criminal intent."

*McCart v. State,* Okl.Cr., 435 P.2d 419 (1968). The record in this case is void of any evidence which would compel the trial court to find that the sale in this case took place as a result of undue persuasion, coercion, or inducement on the part of Marion. Quite to the contrary, there is evidence that the parties drove around and smoked a "joint" and subsequently completed the transaction with apparent ease.

Merely furnishing the defendant an opportunity to act does not constitute entrapment. In *Sam v. State,* Okl.Cr., 510 P.2d 978 (1973), this Court stated:

"The mere request on the part of Dixon did not entice the defendant to do something which he was not already predisposed to do."

Therefore, we hold that the trial court did not err in failing to sustain the defendant's motion for directed verdict, in that, the record does not reveal that there was entrapment, as a matter of law.

For his second assignment of error, the defendant alleges that the trial court erred in refusing to instruct the jury on the issue of entrapment.

We first note that a careful search of the record fails to reveal any written requested instruction by the defense in regard to entrapment. This Court has consistently held that where counsel is not satisfied with the instructions that are

given, or desires the Court to give any particular instructions, it is the duty of the counsel to prepare and to present to the Court such desired instructions and request that they be given. *Luckey v. State,* Okl. Cr., 529 P.2d 994 (1974). However, we do note, that both defense counsel and the trial court made some reference to a possible oral request for such an instruction on October 29, 1975, during the course of the trial. (Tr. 96–97).

> ". . . It is well settled rule in Oklahoma that the instructions given to the jury are left to the discretion of the judge, and that such discretion will not be interfered with as long as the instructions, considered as a whole, fairly and correctly state the applicable law. . . ."

*Turman v. State,* Okl.Cr., 522 P.2d 247 (1974). We find nothing in the record which would indicate that the trial court abused its discretion by failing to give an instruction on entrapment. Obviously, the trial court found that the evidence did not warrant such an instruction. In order to warrant such an instruction there must be evidence from which the court can find that the defendant is entitled to the same and that a fair trial requires such an instruction. In *Lehman v. State,* Okl.Cr., 536 P.2d 1326 (1975) this Court held:

> "We have carefully studied the record and do not find sufficient evidence to raise the defense of entrapment. In *Robinson v. State,* Okl.Cr., 507 P.2d 1296 (1973), this Court, quoting *Watson v. State,* Okl.Cr., 382 P.2d 449 (1969), stated:
>
> " 'The defense of entrapment, like self-defense, is an affirmative one * * * and before it can be considered by the jury, there must appear some evidence which, if believed, would reasonably tend to establish the fact that defendant was lured into the commission of the crime by officers.' "

In the instant case, there is no evidence that the defendant was lured into this sale. Indeed, on both direct and cross-examination, there is evidence that the defendant freely gave to Marion a "roach" to smoke while driving around in order to test the nature of the "goods." This Court notes with interest that act, in and of itself, is substantial evidence for the unlawful delivery of marijuana.

Therefore, after a careful examination of the record, in this case, we find no evidence which would compel the trial court to give such an instruction or show an abuse of his discretion, in refusing to instruct the jury on the defense of entrapment. Having examined the record in regard to the defense of entrapment and having found no written request for an instruction on the same, but rather only oral references to such an instruction, we hold this assignment to be without merit.

For his final assignment of error the defendant alleges that he failed to receive a fair and impartial trial. For his argument in this regard, the defendant attempts to point out discrepancies between the witness Marion's testimony at the preliminary hearing and the initial trial for the defendant, in this case, which was vacated and set aside, on a motion for a new trial, on June 14, 1974.[1]

This Court would hasten to note that since the motion for a new trial was set aside by the District Court, that case is not before this Court; nor should the evidence adduced at that trial be considered by this Court for the purpose of appeal in the instant case. The defendant would have us hold, that since there was, in his opinion, some discrepancies between the preliminary hearing, trial No. 1, and trial No. 2, that he was denied a fair and impartial trial. We find that not to be the case. What is before this Court is the appeal of the trial held on October 29, 1975.

---

1. The record does not reveal upon what grounds the trial court granted the motion for new trial.

 However, assuming arguendo, that there were discrepancies between the preliminary hearing, the first trial, and the case at bar regarding the witness Marion's testimony, mere inconsistencies or conflicts between testimony of a witness or witnesses for prosecution are not enough to constitute use of "perjury" on the part of prosecution to obtain conviction. See *Anderson v. State*, 7 Cir., 403 F.2d 451 (1968). In his brief, the defendant refers to a possible perjury on the part of the witness Marion, in that he allegedly gave different versions at different times as to who commenced the conversation concerning the sale of marijuana. However, as the Attorney General points out, at the defendant's second trial, which is before us today, there were no statements made by State's witness Marion as to whether the defendant approached him with an offer to sell marijuana or not. Obviously the omission of testimony lacks an essential element of perjury. Both parties had available to them, the recorded transcripts of the preliminary hearing and original trial. The defense counsel had every opportunity to cross-examine the State's witness Marion concerning any inconsistencies which he might have heretofore given. Finally, this Court has consistently held that the weight and credibility to be given the testimony of any witness, is a question for the jury. The trial court herein, adequately instructed the jury in regard to weight and credibility as well as interest of each and every witness. Therefore, we hold this assignment of error to be without merit.

Finding no error which would justify the reversal or modification of the judgment and sentence herein, we hold that this case should be, and hereby is, *AFFIRMED*.

BLISS, J., concurs.

BRETT, P. J., specially concurs.

BRETT, Presiding Judge (Specially concurring).

This is one of those cases in which the "pot" calls the "kettle" black. The prosecuting witness was certainly one of questionable character. He is an admitted ex-convict who smoked marihuana with some degree of regularity. On the day in question he admitted smoking marihuana. His testimony was confused and in some instances contradictory. But on the other hand, the defense testimony relating to how the car keys were locked in the trunk of the car, which required the removal of the back seat of the car in order to retrieve the keys, was slim explanation for the activity of defendants around the car trunk. The prosecuting witness testified that the defendants obtained the lid of marihuana from the trunk of the car. In short, the only testimony that remained certain was that of the arresting officers. And in view of the unsatisfactory explanation for the marked money found in defendant Taylor's pocket, the jury was left little to consider. Therefore, I am convinced that this judgment and sentence should be affirmed.

However, insofar as the record does not reflect that the defendant has sustained any other conviction, and assuming that his character otherwise justifies further consideration, I would admonish defense counsel to consider the provisions of 22 O.S. 1971, § 994, for further proceedings in this case. Otherwise, I concur in this decision.