James Patrick McKAY, Appellant,

v.

The CITY OF TULSA, Appellee.

No. M–86–482.

Court of Criminal Appeals of Oklahoma.

Oct. 14, 1988.

Ken V. Cunningham, Tulsa, for appellant.

Neal E. McNeill, City Atty., Larry V. Simmons, Asst. City Atty., Tulsa, for appellee.

## OPINION

BRETT, Presiding Judge:

The appellant, James Patrick McKay, was tried by jury in the Municipal Court of Record of the City of Tulsa, Case Nos. 458229 and 458229A, for the offenses of Driving While Under the Influence of Alcohol (Tulsa, Oklahoma, Rev.Ordinances Title 37, § 275(A)(2) (1985)) (Count I), and Leaving the Scene of an Accident (Tulsa, Oklahoma, Rev.Ordinances Title 37, § 353 (1985)) (Count II). He was found guilty of the charges in Count I but was acquitted of the charges in Count II. The jury assessed appellant a fine of two hundred and fifty dollars ($250.00) and sentenced him to forty (40) days in jail. He now appeals both judgment and sentence.

On February 10, 1986, Anna Lee Butler and Linda Ussrey were stopped at a traffic light in Tulsa when their car was struck from behind by another vehicle. As they drove through the light they were struck again. They pulled into a nearby convenience store, assuming that the car behind them would follow. When it did not, Ms. Butler began following the car which she thought had hit her.

She followed a jeep, driven by appellant, into the driveway of a house. When appellant stepped out of the jeep, Ms. Butler accused him of hitting her car. He denied having been involved in an accident and went inside. Ms. Butler returned to the convenience store and called the police.

Shortly thereafter, the police arrived and followed the two women to appellant's residence. After some effort, the officers finally got appellant to come to the front door. Officer Michael O'Brien informed appellant that he was under investigation for an accident involving his vehicle. Appellant put on some clothes and voluntarily went outside with Officer O'Brien. O'Brien checked the appellant's front bumper and found fresh paint thereon which possibly matched the color of Ms. Butler's car. He obtained appellant's license number and then instructed Ms. Butler to place appellant under citizen's arrest for driving while under the influence and for leaving the scene of an accident. Both Officer O'Brien and Ms. Butler testified that, in their opinion, appellant was intoxicated during the time they were in contact with him.

■ In his first assignment of error, appellant claims that Ms. Butler's testimony should have been excluded because she was in the courtroom during the prosecuting attorney's opening statement, in violation of the previously invoked rule of sequestration. Title 12 O.S.1981, § 2615, "Exclusion of Witnesses," provides in pertinent part that "[a]t the request of a party the court shall order witnesses excluded *so that they cannot hear the testimony of other witnesses.*" (emphasis added). Ms. Butler heard the city attorney's opening statement to the jury, which is neither evidence nor another witness's testimony. Therefore, the purpose of the rule of sequestration was not thwarted and the rule itself not violated by her presence.

Furthermore, the trial judge thoroughly questioned Ms. Butler about her motive for re-entering the courtroom after being asked to leave, and about whether she intended to allow the prosecutor's opening remarks to manipulate her testimony. Satisfied that Ms. Butler's testimony would be untainted by what she had heard, the trial judge allowed her to take the stand—a decision well within his discretion. *See Chambers v. State,* 724 P.2d 776, 779 (Okl. Cr.1986). Appellant's first assignment of error is without merit.

■ In his second assignment of error, appellant argues that he was deprived of a fair trial because the trial judge relieved the City of its constitutional burden of proving venue by taking judicial notice of venue. *See* Okla.Const. Art. II, § 20; *Sproles v. City of Tulsa,* 730 P.2d 9, 10 (Okl.Cr.1986). The relevant events at trial unfolded as follows: counsel for both State and appellant stipulated on the record that

the two ordinances at issue were valid and in effect at the time of the alleged offense, and that the location of the incident—Fourth and Yale Streets—was within the corporate limits of the City of Tulsa; the trial judge took judicial notice of these facts and entered a certified copy of the ordinances violated into the record; at the close of the City's evidence, counsel for the City moved to amend the information to reflect that the accident occurred on Sheridan instead of on Yale Street; the trial court allowed the amendment because it conformed to the evidence; defense counsel objected to the amendment on the basis that it prejudiced appellant's defense; the trial court took judicial notice of the fact that Sheridan Street—the "new" location—was within Tulsa City limits, and granted appellant an exception to this ruling.

It is clear that a trial judge may take judicial notice of venue. *Mucker v. City of Oklahoma*, 513 P.2d 319 (Okl.Cr.1973). *See also* 11 O.S.1981, § 14–110 and 12 O.S. 1981, §§ 2201–2203. While the language of Section 14–110 arguably requires, as a prerequisite to taking judicial notice of venue, proof that the applicable ordinance has "been compiled and filed in accordance with" the provisions of that Section, the statutory propriety or impropriety of judicial notice of venue in the instant case is not the issue which appellant has raised. His claim is not that the judge failed to follow the relevant statutory provisions, or that venue of an accident occurring on Sheridan and not Yale was improper, but that the amendment to the information and subsequent judicial notice thereof, combined, was prejudicial. In light of the fact that appellant was acquitted of the offense of leaving the scene of an accident, we find that the trial judge's decision to take judicial notice that the amended accident site—Sheridan Street—lay within the limits of the City of Tulsa, was in no way prejudicial to appellant. Accordingly, appellant's second assignment of error is without merit.

■ In his third assignment of error, appellant claims that he must be granted a new trial because the jury verdict was "averaged" in violation of 22 O.S.1981, § 952.

According to that section, a defendant may be granted a new trial "[w]hen the verdict has been decided by lot, or by any means other than a fair expression of opinion on the part of the jury." Because "a jury's verdict ... is supposed to be based upon discussion, deliberation, reasoning, and collective judgment, in which each juror has an equal opportunity for individual participation," verdicts reached through a process of chance have long been considered invalid. *See* 8 A.L.R.3d 335, 347 (1966). *See also Frye v. State*, 25 Okl.Cr. 273, 219 P. 722, 724–25 (1923).

While this rule against "quotient verdicts" seems rather clear, its application is not. Consequently, this Court has rendered several inconsistent opinions on this issue. In *Frye*, we adopted the rule, followed by the Texas Court of Criminal Appeals, that "[i]n order to vitiate a verdict determined by lot, the proof must show that the jury, before drawing lots, *agreed to be bound by the result*." *Id.*, 219 P. at 725 (emphasis added). We adhered to this particular theory in *Neighbors v. State*, 56 Okl.Cr. 108, 34 P.2d 290, 291 (1934), and thus refused to invalidate the verdict in that case because the affidavit of one of the jurors said "nothing about the jurors having agreed to be bound by the result of striking an average by the method alleged in the affidavit, and neither [did] it say that the verdict reached was the number of years that was shown in striking an average."

However, in *West v. State*, 443 P.2d 131, 133 (Okl.Cr.1968), the jury's verdict was invalidated simply because there was evidence that "the amount of punishment arrived at was by taking an average of the time written down by all twelve jurors." In granting a new trial, we did not address whether the jurors, prior to averaging, had "agreed to be bound by their result." Yet, in *Tindell v. State*, 705 P.2d 692, 693 (Okl. Cr.1985), this Court again based its refusal to grant the appellant a new trial on the fact that there was no proof that the jurors agreed to be bound beforehand by the result they reached through averaging. Then, in *Rowland v. State*, 707 P.2d 1215, 1216–17 (Okl.Cr.1985), we returned to the

706

rule espoused in *West*, that when a jury fixes punishment through a process of averaging, this, in and of itself, is sufficient grounds for a new trial.

■■■ We find that the better policy is neither to automatically invalidate the verdict because it was averaged, nor to condition the validation of a verdict on the absence of an agreement reached by the jury prior to averaging. In keeping with the rationale behind the prohibition against quotient verdicts—that jurors should arrive at the verdict and amount of punishment through their own individual thinking processes, and the language in section 952— that a new trial may be granted when the verdict has been decided by "any means other than a fair expression of opinion on the part of the jury," we believe that the dispositive issue in these cases should be whether the verdict is in fact a product of each juror's thoughtful analysis. Therefore, we hold the following: (1) If there is proof that jurors merely followed an uninquisitive averaging scheme in arriving at their verdict, it must be invalidated under section 952; (2) Evidence that the jury utilized the quotient process *at some point* in their deliberations is not fatal to the verdict, so long as the figure finally reached was discussed by the jury and agreed upon as a fair expression of their opinion. All inconsistent opinions are hereby overruled.

Under these rules, the verdict in the case at bar must stand. During the polling of the jury, the following exchange occurred:

THE COURT: Let me ask also, was any method of chance used in arriving at any verdict?

MR. GILLELAND: No.

THE COURT: The verdict in each case reflect the judgment of each juror who concurs in these verdicts?

MR. GILLELAND: Yes, sir. (TR. 117)

THE COURT: [L]et me inquire of each of you, I'll start with Mr. Vann, are each of these verdicts your verdicts?

MR. VANN: Yes.

THE COURT: Do they reflect your judgment that you concur in fully?

MR. VANN: Yes.

THE COURT: Are they the result of casting lots or any method of chance?

MR. VANN: Well, no, we just discussed it. (TR. 119)

MR. CUNNINGHAM: I'd ask the court to inquire if there was a method of taking the days of sentencing whether that was the result of an average number or that was an agreed verdict.

THE COURT: Is this an agreed verdict or an average number? I'll start with Mr. Fridenberg. Is this an agreed verdict, sir?

JUROR FRIDENBERG: It was the last. It was averaged and then agreed upon.

THE COURT: I see. Ms. Bell?

JUROR BELL: Yes, after we pro and coned [sic] we all agreed. I agreed.

JUROR GILLELAND: It was averaged.

THE COURT: Tell me how it was arrived at?

JUROR GILLELAND: Well, the whole thing?

THE COURT: How you agreed as to the average?

JUROR GILLELAND: That's what I was going to tell you. Do you want each vote or ...

THE COURT: No.

JUROR GILLELAND: That's how I would have to tell you as to how we came from an average and how we voted....

While the jurors apparently utilized the averaging process at some point during their deliberations, their ultimate verdict was one which they discussed and to which they each individually assented. Juror Gilleland indicated that the verdict reflected the judgment of each juror; Juror Vann said that the verdict was *discussed*. While Juror Fridenberg stated that the verdict was averaged, she then stated that it was ultimately agreed upon. And, Juror Bell indicated that after they all "pro and coned [sic]," they came to an agreed upon verdict. The verdict in the instant case was a fair expression of each juror's opinion, and appellant's third assignment of error is denied.

Appellant claims in his fourth assignment of error that some of the evidence

presented against him at trial should have been suppressed as the fruit of an illegal arrest. Specifically, he argues that he was arrested by the police, not by Ms. Butler, and that such a warrantless arrest for a misdemeanor not committed in the Officers' presence was in violation of 22 O.S. Supp.1986, § 196. This assignment of error is denied.

■■■ Initially, we note that appellant waived any objection to his arrest by failing to challenge its legality prior to entering his plea to the charges. *Carter v. State*, 738 P.2d 562 (Okl.Cr.1987). Regardless of his waiver, we still find that his arrest, even if effected by the officers and not Ms. Butler, was valid. According to section 196(5) of title 22, an officer may make a warrantless arrest "[w]hen he has probable cause to believe that the party was driving or in actual physical control of a motor vehicle involved in an accident upon the public highways, streets or turnpikes and was under the influence of alcohol or intoxicating liquor...." As "citizen informants," Ms. Butler and Ms. Ussrey were capable of supplying the arresting officers with the probable cause necessary to make a valid arrest under this statutory provision. *See Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed. 2d 612 (1972). In addition, the officers' firsthand observation of appellant's intoxication, coupled with the dent in Ms. Butler's car trunk and paint scrapings on appellant's jeep bumper, could have sufficed for probable cause to arrest.

Finding no error, judgment and sentence is AFFIRMED.

PARKS, J., concurs.

BUSSEY, J., concurs in results.